MICHAEL BLOSE, APPELLANT, V. J. ALLAN MACTIER,
DOING BUSINESS AS PONCA HILLS FARM, APPELLEE.
562 N.W.2d 363

Filed April 24, 1997.   No. S-95-418.

Kevin R. Hopp and Thomas J. Young, of Young & LaPuzza, for appellant.

Bartholomew L. McLeay and Diana J. Vogt, of Kutak Rock, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

WHITE, C.J.

Michael Blose appeals the Nebraska Court of Appeals' affirmance of the district court for Washington County's order sustaining J. Allan Mactier's motion for directed verdict and dismissing Blose's petition with prejudice. We affirm.

Blose is a farrier who came on a regular schedule to Ponca Hills Farm. At all times relevant to this case, Mactier owned Ponca Hills Farm, an enterprise which boarded horses, furnished riding lessons, and owned brood mares and hunt horses.

On June 26, 1992, Blose arrived at Ponca Hills Farm to replace three missing shoes on one of Mactier's horses, Saint Nicholas (Saint), an approximately 2,000-pound thoroughbred Clydesdale cross. Although he was generally docile, Saint had a reputation among employees at the farm for bolting or pulling away before the lead rope could be removed when he was turned out to pasture or when employees tried to catch him in the pasture. Blose had been Saint's farrier since at least 1990, and at Blose's request, an employee of the farm would normally hold Saint when Blose worked on him because Saint would not always stand still in the cross-ties.

On the day of the injury, Ponca Hills Farm manager, Judith Csejthey, and Blose drove to the paddock where Saint had been placed when he was brought from the pasture 3 to 5 days earlier. Although Blose shod horses only in a barn setting, Saint had been left in the paddock until Blose's arrival because the veterinarian had ordered that Saint not stand in a stall for prolonged periods. Csejthey took a lead rope and can of grain, entered the paddock by herself, and attempted to catch Saint. As she approached Saint, Saint took a few steps back and began a slow lope around the paddock. Csejthey tried again to catch Saint, and Saint again loped around the paddock.

Although it was not part of Blose's job to assist in catching the horses on which he worked, and although Csejthey did not ask for his assistance, Blose entered the paddock as Saint was loping around after Csejthey's second attempt to catch him. Saint came to a stop in the corner of the paddock, and Csejthey approached from the rear while Blose walked toward Saint from the front in an attempt to keep the horse cornered. As they approached, Saint turned out of the corner and took a step toward Blose; Blose moved toward Saint, extended his left arm, and waved it. Saint took a step back, turned, and jumped over the paddock fence. Saint broke the top board of the fence as he went over, and part of the board came loose and hit Blose in the head, rendering him unconscious. The blow fractured Blose's temporal bone, bruised his brain, and left Blose in a coma for almost 2 weeks. Blose has no memory of the day of the accident.

Blose sued Mactier for damages resulting from this encounter with Saint. In his second amended petition, Blose alleged that Saint had developed dangerous propensities known to Mactier which posed an unreasonable risk of harm to Blose; that the material composition, nature, and type of construction of the paddock fence were inherently dangerous for use in constraining horses; that Blose could not discover, realize, or protect himself from these dangers, and Mactier knew or should have known this; and that Mactier was negligent in failing to protect or warn Blose of these dangers, such that Blose was damaged. At trial, the parties stipulated that Blose's injuries resulted in $80,016.94 in medical bills.

At trial, Ponca Hills Farm employees Csejthey, Nicole Prescott, and Jarrod Ryan testified that Saint had a tendency to bolt or pull away when he was turned out to pasture or an attempt was made to catch him. However, Ryan was uncontradicted in his testimony that Saint had never kicked, bit, threatened, or reared up in Ryan's presence and specifically recalled that, although he had warned Blose about some particularly problematic horses, Saint was not one of them. Csejthey stated that Saint did not have a habit of going through fences prior to the date of the accident. Csejthey testified that Blose had worked on Saint many times before the date of the accident and had particular knowledge about Saint. Csejthey and Prescott

stated that Blose asked that someone hold Saint when Blose worked on him because Saint fidgeted in the cross-ties.

Blose's expert witness, Paul Bast, stated that the fencing in the paddock was adequate to contain Saint and that Saint's flightiness was not an unusual characteristic in horses. However, Bast testified that Saint created an unreasonable risk of harm to Blose. Bast stated that everyone had trouble catching Saint; Saint was a very large animal; Saint was herd bound (by nature he traveled in groups), but was left in the paddock for 3 to 5 days, where he could see his pasture mates; Saint was suffering from chronic lameness and had been standing on a hard surface for several days with three shoes missing; and the heat and flies were irritating on the day of the accident. Bast stated that in his opinion these factors combined to create in Saint an extremely agitated state, such that he did something he had never done before in jumping over the fence. Bast testified that Blose should have been warned about these circumstances.

Bast also stated that Saint's agitation would have been noticeable, manifesting itself in Saint's eyes and in his body language. However, Csejthey testified that when she was in the paddock with Saint on the day of the accident, Saint exhibited no nervous signs—he did not whinny, his ears were not pinned back, he was not rearing up, he did not show the whites of his eyes, and he was not weaving or cribbing. This testimony was uncontradicted.

Bast also stated that in his professional capacity, he worked with Blose on a regular basis. Bast testified that once Blose had seen a horse at Bast's place of employment 15 to 20 times, Bast did not feel that it was necessary to tell Blose specifically about the personality traits or temperament of a horse because Blose would then have been very familiar with the horse.

Following the close of Blose's case at trial, Mactier moved for a directed verdict. The district court granted the motion and dismissed Blose's petition with prejudice. Blose timely filed a motion for new trial, which the district court overruled, and Blose appealed to the Court of Appeals. In a memorandum opinion filed November 14, 1996, the Court of Appeals affirmed the decision of the district court, finding that Blose failed to prove a prima facie case of negligence against Mactier

as either a domestic animal owner or a landowner. We granted Blose's petition for further review.

On petition for further review, Blose alleges that the Court of Appeals erred in (1) determining that the district court was correct when it granted Mactier's motion for directed verdict because there were issues of fact remaining upon which reasonable minds could reach differing conclusions; (2) failing to appropriately apply the standard for reviewing the district court's decision; and (3) determining that the district court correctly denied Blose's motion for new trial.

In reviewing the action of a trial court, an appellate court must treat a motion for directed verdict as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Traphagan v. Mid-America Traffic Marking*, 251 Neb. 143, 555 N.W.2d 778 (1996); *Ochs v. Makousky*, 249 Neb. 960, 547 N.W.2d 136 (1996).

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Hoover v. Burlington Northern RR. Co.*, 251 Neb. 689, 559 N.W.2d 729 (1997); *Menkens v. Finley*, 251 Neb. 84, 555 N.W.2d 47 (1996).

In his first assignment of error, Blose alleges that the Court of Appeals erred in determining that the trial court was correct when it granted Mactier's motion for directed verdict because there were issues of fact remaining upon which reasonable minds could reach differing conclusions. We disagree.

A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Hoover, supra*; *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996). The party against whom the verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the motion is made,

the case may not be decided as a matter of law. *Hoover, supra*; *Sedlak Aerial Spray v. Miller*, 251 Neb. 45, 555 N.W.2d 32 (1996).

In his petition, Blose first alleged that Mactier, as the owner of Saint, breached his duty to Blose by failing to warn Blose of Saint's dangerous propensities and by failing to protect Blose from this danger. As did the Court of Appeals, we find that Blose did not establish a prima facie case of negligence against Mactier because Blose did not demonstrate that Mactier breached a duty as the owner of Saint.

The rule in Nebraska concerning the liability of the owner of a domestic animal has long been established. Ordinarily, the existence of vicious or dangerous propensities in a domestic animal and knowledge of such propensities are indispensable to liability on the part of the owner of the animal. *Lee v. Weaver*, 195 Neb. 194, 237 N.W.2d 149 (1976); *Fritz v. Marten*, 193 Neb. 83, 225 N.W.2d 418 (1975); *Huber v. Timmons*, 184 Neb. 718, 171 N.W.2d 794 (1969); *Durrell v. Johnson*, 31 Neb. 796, 48 N.W. 890 (1891). Additionally, to merit recovery, the animal must have demonstrated a propensity to engage in the same behavior which led to the injury at issue. See, *Durrell, supra* (holding that evidence that horse habitually kicked his stall and once or twice kicked other horses was not sufficient to demonstrate notice on part of owner that horse would kick person and stating that owner is not responsible for any mischief caused by animal if mischief was not kind to be expected of animal); *Lee, supra* (holding that evidence that cat had once previously bitten its owner without any evidence as to circumstances surrounding prior bite was not sufficient to find that cat was vicious or dangerous animal or that owner had notice of its vicious or dangerous nature).

The record in this case is devoid of any evidence of Saint's behavior prior to the date of the accident which would demonstrate that Mactier or his employees had notice that Saint would jump a fence when Blose and Csejthey attempted to catch him. The record indicates that Saint had never before attempted to jump a fence when faced with this type of situation. Likewise, Saint's tendency to bolt when turned out into the pasture and his reputation for being difficult to catch are not sufficiently simi-

lar to his behavior in this situation so as to constitute the notice required to give rise to a duty on the part of Mactier as the owner of Saint. Such knowledge is indispensable to Mactier's liability as the owner of a domestic animal, and Blose failed to present evidence of any such notice.

In his petition, Blose also alleged that Mactier, as the owner of Ponca Hills Farm, breached his duty to Blose by failing to warn Blose of Saint's dangerous propensities and the dangerous condition created by the use of the fencing materials at the paddock, and by failing to protect Blose, as a business invitee, from these dangers. Again, we agree with the Court of Appeals that Blose did not establish a prima facie case of negligence against Mactier as a landowner.

We recognize that this court in *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996), abrogated the distinction between business invitees and licensees. However, in *Young v. Eriksen Constr. Co.*, 250 Neb. 798, 553 N.W.2d 143 (1996), we also stated that this abrogation of classifications is prospective only; thus, it is of no effect in the instant case.

According to the pre-*Heins* rule, a possessor of land is subject to liability for injury caused to a business invitee by a condition of the land if (1) the possessor defendant either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the defendant should have realized that the condition involved an unreasonable risk of harm to a business invitee; (3) the defendant should have expected that a business invitee such as the plaintiff either would not discover or realize the danger or would fail to protect himself against the danger; (4) the defendant failed to use reasonable care to protect the business invitee against the danger; and (5) the condition was a proximate cause of the damage to the plaintiff. *Cloonan v. Food-4-Less*, 247 Neb. 677, 529 N.W.2d 759 (1995); *Grote v. Meyers Land & Cattle Co.*, 240 Neb. 959, 485 N.W.2d 748 (1992). We have repeatedly held that it is the superior knowledge the invitor has or should have which is the foundation of the invitor's liability, and absent such superior knowledge, no liability exists. *Richardson v. Ames Avenue Corp.*, 247 Neb. 128, 525 N.W.2d

212 (1995); *Kliewer v. Wall Constr. Co.*, 229 Neb. 867, 429 N.W.2d 373 (1988).

Here again, the record is devoid of any evidence demonstrating that Mactier possessed superior knowledge of any dangerous propensities on the part of Saint or any dangerous conditions manifested by the materials used in the construction of the paddock. As noted above, Saint had never before attempted to go through a fence. The information that Mactier had was exactly the same information that Blose possessed—Blose routinely worked with Saint; Blose knew that Saint was flighty; Blose frequently asked that an employee hold Saint when Blose worked on him; Blose knew that it was not part of his job description to help catch horses and that Csejthey did not request his assistance in catching Saint; and Blose knew that Saint was not exhibiting any of the signs of agitation that his expert witness said would be visible if, indeed, Saint was agitated. There is nothing in the record to indicate that Mactier or Mactier's employees possessed any information superior to that possessed by Blose, and the record is clear that Saint had not exhibited this particular behavior before the day of the accident.

Additionally, with regard to the paddock fence, Blose's own expert stated that although the fencing was not adequate to be used as a catch pen, the paddock was adequate for use in containing horses, including Saint. Additionally, the record is devoid of any evidence demonstrating that Mactier or his employees negligently constructed the paddock or that there was any visible or apparent defect in the fence.

Because Blose presented no evidence demonstrating the notice required to give rise to a duty on Mactier's part as a domestic animal owner or as a landowner, we find that the district court properly directed a verdict in Mactier's favor. Blose's first assignment of error is without merit.

In his second assignment of error, Blose alleges that the Court of Appeals failed to appropriately apply the standard for reviewing the district court's decision. Blose argues, essentially, that the Court of Appeals stated the appropriate standard of review but failed to reach the result mandated by that standard. The Court of Appeals did set forth the correct standard of review and, as noted above, correctly affirmed the district

court's directed verdict. Thus, Blose's second assignment of error must also fail.

In his final assignment of error, Blose argues that the Court of Appeals erred in determining that the district court correctly denied Blose's motion for new trial. We disagree.

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld on appeal in the absence of an abuse of that discretion. *Hoover v. Burlington Northern RR. Co.*, 251 Neb. 689, 559 N.W.2d 729 (1997); *Menkens v. Finley*, 251 Neb. 84, 555 N.W.2d 47 (1996). Because we find that the district court correctly directed a verdict in Mactier's favor, we also find that the trial court did not abuse its discretion in refusing to grant Blose a new trial. Blose's last assignment of error is without merit.

Because we find that the Court of Appeals correctly upheld the district court's directed verdict in favor of Mactier and its refusal to grant Blose's motion for new trial, we affirm.

AFFIRMED.