KATHY J. BAHRS, APPELLANT AND CROSS-APPELLEE, V.
R M B R WHEELS, INC., DOING BUSINESS AS
THE SUNSHINE TAVERN, AND DEANNA L. CALLAWAY,
AN INDIVIDUAL, APPELLEES AND CROSS-APPELLANTS.
574 N.W. 2d 524

Filed January 13, 1998.    No. A-96-922.

Steven H. Howard, of Law Offices of Ronald J. Palagi, P.C., for appellant.

Jerald L. Rauterkus, of Erickson & Sederstrom, P.C., for appellees.

MILLER-LERMAN, Chief Judge, and IRWIN and MUES, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Kathy J. Bahrs appeals a jury verdict against her and in favor of the defendants, R M B R Wheels, Inc. (Wheels), doing business as the Sunshine Tavern, and Deanna L. Callaway, an individual. Bahrs requests that the verdict be reversed and the case be remanded for a new trial. She claims that the jury was improperly instructed. The defendants cross-appeal, claiming that their motion for directed verdict should have been granted. For the reasons stated below, we reverse, and remand for a new trial.

## II. FACTUAL BACKGROUND

On the evening of August 29, 1992, Bahrs went to the Sunshine Tavern in Fremont at approximately 7 p.m. While there, she drank six or seven beers. She left at approximately 11

p.m., exiting through the north door into the parking lot. One of the women with whom Bahrs was leaving slipped in the parking lot, fell, and got back up. Bahrs then fell. According to Bahrs, "I can remember my leg slipping and I fell and my leg was twisted and it was like a rock or something made me slip and my foot slipped down like into a hole; not like a real deep hole, like a pot hole." She also described the place where she fell as follows: "It was like in a dip and I hit something and I slipped and my ankle twisted." As a result of the fall, Bahrs suffered injuries to her ankle.

On August 29, 1992, Callaway was operating the Sunshine Tavern. Callaway was leasing the premises from Wheels, which had acquired the property from a third party on August 7. Wheels acquired the property subject to an existing lease between Callaway and the third party. Effective September 1, 1992, Wheels acquired the Sunshine Tavern business from Callaway.

Bahrs commenced a premises liability lawsuit on August 15, 1995, alleging that the defendants were negligent in failing to inspect the premises to determine whether the premises were free of holes, failing to maintain the premises in a reasonably safe condition, failing to warn her of hazardous conditions which were known or should have been known to the defendants, and failing to have adequate lighting so patrons could see any holes. In their answers, the defendants generally denied the allegations in the petition and affirmatively alleged that Bahrs was contributorily negligent. A jury trial was held August 8, 9, and 12, 1996. Witnesses at the trial included Richard Ottis, the president of Wheels; Callaway; Arthur Callaway, Callaway's husband; other patrons of the bar on the evening of August 29, 1992; and Charles Bahrs, Bahrs' husband. There was also medical testimony.

In addition to the facts recited previously, the evidence at trial showed the following: The parking lot at issue is a gravel lot. The testimony was conflicting regarding the condition of the lot. According to Bahrs' witnesses, there were very large potholes in the lot. According to Callaway, Arthur Callaway, and Ottis, there were no potholes in the parking lot and the lot had been "drug" 3 days prior to Bahrs' fall. The evidence was

also conflicting regarding the type, placement, and adequacy of the lighting for the parking lot.

Ottis and the Callaways testified that they had never discussed whose responsibility it was to maintain the parking lot. According to Ottis, Wheels was "probably" responsible for the lighting in the parking lot. The lease between Callaway and the third party who owned the property prior to Wheels does not address the parking lot specifically but provides only that the lessee shall maintain the "premises." Callaway testified that she inspected the lot every morning, including the morning of August 29. If she determined that the lot needed to be maintained, she told her husband and he "would see to it." Ottis testified that the Callaways "kept it [the lot] up good." Ottis testified that he was in the parking lot every couple of days in the month of August and checked the lot's condition "a lot."

The defendants moved for a directed verdict following Bahrs' case and at the close of all evidence. The defendants' motions were overruled. The jury returned a verdict for the defendants. This appeal timely followed.

## III. ASSIGNMENTS OF ERROR

Bahrs' assignments of error may be summarized as follows: (1) The trial court erred in giving jury instruction No. 4, which instructed the jury that the interests of both defendants were the same and that the jury must find either in favor of or against both defendants, and (2) the trial court erred in rejecting "plaintiff's proposed jury instruction number 3," which was a verdict form providing that the jury could find against one defendant and not find against the other or that it could find against the respective defendants in different degrees and percentages of liability.

For their cross-appeal, the defendants claim that the trial court erred in failing to grant their motion for directed verdict.

## IV. ANALYSIS

### 1. DEFENDANTS' MOTION FOR DIRECTED VERDICT

Before addressing Bahrs' error that is assigned and argued, we address the defendants' cross-appeal. The defendants assign that the trial court should have granted their motion for directed

verdict because Bahrs failed to prove that the parking lot created an unreasonable risk of harm to her.

In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Blose v. Mactier*, 252 Neb. 333, 562 N.W.2d 363 (1997). In order to sustain a motion for directed verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion from the evidence. *Id.*; *Hoover v. Burlington Northern RR. Co.*, 251 Neb. 689, 559 N.W.2d 729 (1997). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Sacco v. Carothers*, 253 Neb. 9, 567 N.W.2d 299 (1997).

This case is a premises liability case, and it is undisputed that Bahrs was a business invitee on the premises. In *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996), the Nebraska Supreme Court abrogated the classifications of invitee and licensee in favor of a standard of reasonable care for all those lawfully on the premises of another. However, the *Heins* rule is prospective in application and, thus, without effect in the instant case. See *Blose, supra.*

Based on the law predating *Heins*, a possessor of land is subject to liability for injury caused to a business invitee by a condition of the land if (1) the possessor defendant either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the defendant should have realized the condition involved an unreasonable risk of harm to a business invitee; (3) the defendant should have expected that a business invitee such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the defendant failed to use reasonable care to protect the plaintiff invitee against the danger; and (5) the condition was a proximate cause of damage to the plaintiff. *Cloonan v. Food-4-Less*,

247 Neb. 677, 529 N.W.2d 759 (1995); *Richardson v. Ames Avenue Corp.*, 247 Neb. 128, 525 N.W.2d 212 (1995). An unreasonable risk of harm has been defined as a risk that a reasonably careful person under all circumstances of the case would not allow to continue. See NJI2d Civ. 3.02.

In the case before us, Bahrs contended that the defendants were negligent in failing to inspect the premises to determine whether the premises were free of holes, failing to maintain the premises in a reasonably safe condition, failing to warn her of hazardous conditions which were known or should have been known to the defendants, and failing to have adequate lighting so patrons could see any holes. There was conflicting evidence regarding the condition of the surface of the gravel lot and the location, type, and adequacy of the lighting for the gravel lot. After giving Bahrs the benefit of all inferences deducible from the evidence, we conclude that the issue of whether an unreasonable risk of harm to her existed was an issue for the jury to determine. Reasonable minds could draw more than one conclusion regarding the existence of an unreasonable risk of harm. Therefore, the defendants' motion for directed verdict was properly overruled, and the case was submitted to the jury.

## 2. JURY INSTRUCTION NO. 4

On appeal, Bahrs argues that the submission of instruction No. 4, which required the jury to find either against both defendants or for both defendants, was error. This instruction reads: "There are two Defendants in this lawsuit. Their interests are the same. If you find in favor of one of them, you must find in favor of both of them. If you find against one of them, you must find against both of them."

Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party. *Hoover v. Burlington Northern RR. Co.*, 251 Neb. 689, 559 N.W.2d 729 (1997); *Solar Motors v. First Nat. Bank of Chadron*, 249 Neb. 758, 545 N.W.2d 714 (1996). However, it is the duty of the trial court to instruct on the proper law of the case, and failure to do so constitutes prejudicial error. *Heye Farms, Inc. v. State*, 251 Neb. 639, 558 N.W.2d 306 (1997);

*Wilson v. Misko*, 244 Neb. 526, 508 N.W.2d 238 (1993). In determining whether such has been done, all the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *Heye Farms, Inc., supra.* See, also, *Kent v. Crocker*, 252 Neb. 462, 562 N.W.2d 833 (1997).

In submitting instruction No. 4, it appears from the record that the trial court concluded that the defendants were engaged in a joint enterprise. At the jury instruction conference, the court stated in response to the plaintiff's objection to instruction No. 4: "My whole instructions are set up that way, that they are both equally and severally liable."

Neb. Rev. Stat. § 25-21,185.10 (Reissue 1995) provides the basis for treating defendants engaged in a joint enterprise as one for the purposes of determining liability.

> In an action involving more than one defendant when two or more defendants as part of a common enterprise or plan act in concert and cause harm, the liability of each such defendant for economic and noneconomic damages shall be joint and several.
>
> In any other action involving more than one defendant, the liability of each defendant for economic damages shall be joint and several and the liability of each defendant for noneconomic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of noneconomic damages allocated to that defendant in direct proportion to that defendant's percentage of negligence, and a separate judgment shall be rendered against that defendant for that amount.

Whether a joint or common enterprise exists is generally a question of fact. *Evertson v. Cannon*, 226 Neb. 370, 411 N.W.2d 612 (1987). In 1995, the Nebraska Supreme Court adopted the definition of joint enterprise set forth in the Restatement (Second) of Torts § 491, comment *c.* (1965). See *Winslow v. Hammer*, 247 Neb. 418, 527 N.W.2d 631 (1995). As a result, the elements essential to a joint enterprise are (1) an agreement, express or implied, among the members of the

group; (2) a common purpose to be carried out by the group; (3) *a community of pecuniary interest in that purpose among the members*; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *Winslow, supra.* The *Winslow* court stated that its "holding promotes the more desirable policy of limiting the joint enterprise defense to its business and commercial roots." 247 Neb. at 426, 527 N.W.2d at 636. Although the *Winslow* court indicated that the requirement of a common pecuniary interest was a new element, it appears that there is a similar requirement set forth in previous case law. Prior to *Winslow*, Nebraska jurisprudence provided that the absence of mutual interest in the profits or benefits is conclusive that a joint venture does not exist. See *Global Credit Servs. v. AMISUB*, 244 Neb. 681, 508 N.W.2d 836 (1993).

Regarding the common pecuniary interest requirement for a joint venture, the Restatement, *supra*, provides that it entails participants' having a financial stake in the endeavor. Other authorities explain the common pecuniary interest requirement for a joint venture includes an agreement to share in profits and losses. See, 46 Am. Jur. 2d *Joint Ventures* § 17 (1994); 48A C.J.S. *Joint Ventures* § 13 (1981). See, also, *S & W Air Vac v. Dept. of Revenue*, 697 So. 2d 1313 (Fla. App. 1997); *Matter of Marriage of Louis*, 911 S.W.2d 495 (Tex. App. 1995). See, also, *Global Credit Servs., supra.* In the context of the landlord and tenant relationship, even an agreement between landlord and tenant that the landlord will receive as rent a stipulated portion of the income or net profits derived by the lessee through its business conducted on the premises does not create a joint enterprise. See *Clapp v. JMK/Skewer, Inc.*, 137 Ill. App. 3d 469, 484 N.E.2d 918 (1985). See, generally, 46 Am Jur. 2d, *supra*, § 48; 48A C.J.S., *supra*, § 9. In the case before us, there is nothing in the record to even suggest that the defendants had any agreement to share losses and profits even if the other elements of joint enterprise existed, and we note that neither party moved for a directed verdict on this issue. However, assuming, without deciding, that the trial court had the authority to determine sua sponte as a preliminary matter the existence of a joint enterprise between the defendants, it was error for the trial court

to determine that the defendants' relationship was a joint enterprise. There was no evidence to support a finding of joint enterprise, let alone to find as a matter of law the existence of joint enterprise. Based on the evidence presented, the defendants' interests should have been treated as separate and distinct, and the jury should have been instructed accordingly.

### 3. Bahrs' Proposed Verdict Form

Based upon our resolution of Bahrs' first assigned error, it necessarily follows that the verdict form offered by Bahrs as her proposed instruction No. 3 should have been given. It properly provides that the jury may consider the negligence of each defendant separately. Such a verdict form was warranted by the evidence. It was reversible error for the trial court to fail to give it. See *Gustafson v. Burlington Northern RR. Co.*, 252 Neb. 226, 561 N.W.2d 212 (1997) (holding that to establish reversible error from refusal to give requested jury instructions, appellant must show prejudice from refusal to give instruction, that tendered instruction is correct statement of law, and that tendered instruction is warranted by evidence).

## V. CONCLUSION

For the reasons stated above, we conclude that jury instruction No. 4, providing that the defendants' interests were the same and that the jury must render a verdict either for both defendants or against both defendants, adversely affected Bahrs' substantial rights and constituted prejudicial error requiring reversal. Accordingly, we also conclude that the failure to give Bahrs' proposed verdict form was also error. We reverse, and remand for a new trial.

Reversed and remanded for a new trial.