MICHAEL STEELE, APPELLEE AND CROSS-APPELLANT, V.
ENCORE MANUFACTURING CO., INC.,
A NEBRASKA CORPORATION, APPELLANT AND CROSS-APPELLEE;
COLTEC INDUSTRIES, INC., A PENNSYLVANIA CORPORATION,
APPELLEE; AND FUCHS MACHINERY, INC.,
A NEBRASKA CORPORATION, AND CNA INSURANCE COMPANY,
ITS WORKERS' COMPENSATION INSURANCE CARRIER, APPELLEES.

579 N.W.2d 563

Filed May 12, 1998.   No. A-96-952.

P. Shawn McCann and Robert A. Wichser, of Sodoro, Daly &
Sodoro, for appellant Encore.

James E. Harris and Britany S. Shotkoski, of Harris, Feldman Law Offices, for appellee Steele.

Susan E. Fieber, of Nolan, Roach, Fieber & Lautenbaugh, for appellee Coltec.

MILLER-LERMAN, Chief Judge, and IRWIN and INBODY, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Michael Steele brought suit against Encore Manufacturing Co., Inc. (Encore), and Coltec Industries, Inc. (Coltec), defendants, for injuries he suffered in an accident while repairing an air compressor. Steele's employer, Fuchs Machinery, Inc. (Fuchs), was named as a defendant solely for subrogation purposes. See Neb. Rev. Stat. § 48-118 (Reissue 1993).

Encore appeals from the jury verdict in favor of Steele in the amount of $870,000 in this negligence action. On appeal, Encore asserts, among other things, that the district court committed reversible error regarding the jury instructions. Because we agree that the court improperly instructed the jury concerning the alleged negligence of Fuchs, we reverse, and remand for a new trial.

Steele has filed a cross-appeal. On cross-appeal, Steele asserts that the court erred in failing to award Steele costs, in granting a partial directed verdict in favor of Coltec, and in not equalizing the peremptory challenges between Steele and the defendants during jury selection. Finding no merit to any of Steele's assigned errors, we affirm the court's rulings regarding those issues.

## II. BACKGROUND

The incident giving rise to this lawsuit occurred when Steele suffered injuries while servicing an air compressor owned by Encore and manufactured by Coltec. Steele was employed by Fuchs as a service technician for air compressors. According to the record, Steele had serviced between 400 and 500 air compressors at more than 70 different manufacturing plants prior to the accident in the present case.

On or about May 9, 1991, Steele received a telephone call from Billy Harms, an employee of Encore, requesting service

on an air compressor at Encore's plant in Beatrice, Nebraska. Steele went to Encore to service the air compressor on May 13. According to the record, Steele had serviced the air compressor at Encore's plant on a prior occasion. He had explained to Harms on the prior occasion how to turn off the power to the compressor at the "disconnect box," which was located on the wall near the compressor, and how to turn off the power at the "selector switch," which was located on the compressor, as well as how to change filters on the compressor.

According to the record, Steele arrived at Encore on May 13, 1991, at approximately 9 a.m. Steele first spoke with another Encore employee, Brian Ferguson, who indicated that he would locate Harms for Steele. Steele proceeded to the air compressor, where he met Harms. Steele and Harms discussed the problems Encore had had with the air compressor and what Harms had done to attempt to remedy the problems, including checking a pulley and some belts in the compressor. Steele noticed an oil leak and checked the temperature of the oil which had leaked from the compressor. According to his testimony, Steele was able to ascertain that the machine had not run for 45 minutes or more because the oil was cool to the touch.

Steele testified that he asked Harms, " 'Billy, is everything taken care of on the machine?' " and that Harms replied " 'Yes, no problem.' " According to Steele, this colloquy establishes that he believed Harms had shut off the power to the machine at the disconnect box on the wall. We note that Steele was not asked at trial what the colloquy meant to him, nor was Harms asked if he ever made the above statement to Steele. Steele testified that he then shut off the power to the machine at the selector switch.

Steele and Harms began to service the compressor, and Steele removed at least one of the belts inside the compressor. According to Steele's testimony, his hand was inside the air compressor, and in order to remove the belts, he had to lift the belts up and over a fan blade. Steele testified that while he was removing one of the belts, "suddenly and unexpectedly, the machine took off, and [his] hand was trapped between the shroud, bottom part of the machine, and the metal fan blade. . . . And it was like pulling [his] arm in."

Steele suffered severe disfigurement of his hand as a result of the accident. According to the record, Steele ultimately underwent five surgeries to repair his hand. Despite these surgeries, Steele lost three fingers and a portion of his "mid hand" as a result of the accident.

Subsequent to the accident, Steele returned to work at Fuchs but was eventually "let go" by Fuchs. Steele ultimately formed his own business to do air compressor service work. Steele testified that, with a few accommodations, he was able to perform the work and service air compressors and that he had been successful in soliciting business after leaving Fuchs.

On April 8, 1996, Steele filed an amended petition, bringing suit against Encore and Coltec. Steele asserted that Encore had been negligent in numerous particulars surrounding Encore's procedure for ensuring that the disconnect box was properly shut off and locked prior to service on the air compressor. Steele asserted that Coltec was liable under the doctrine of strict liability for the manufacture of the air compressor, as well as for a breach of implied warranty of merchantability.

At the conclusion of the trial, the district court sustained Coltec's motion for directed verdict concerning the implied warranty of merchantability claim. The court submitted the remaining issues to the jury. The jury returned a verdict in favor of Steele and against Encore for $870,000 on the negligence claim and returned a verdict in favor of Coltec and against Steele on the strict liability claim. The present appeal was timely filed.

## III. ASSIGNMENTS OF ERROR

On appeal, Encore has assigned nine errors. Because our resolution of one of these errors disposes of the appeal, we need not further discuss Encore's remaining assigned errors. Encore's assigned error which we do discuss, and which resolves the appeal, is that the district court erred in instructing the jury that it could not consider the conduct of Fuchs, Steele's employer.

On cross-appeal, Steele has assigned three errors. Steele asserts that the district court erred in not ordering Encore to pay deposition costs incurred by Steele in deposing employees of Coltec. Second, Steele asserts that the district court erred in

granting Coltec's motion for directed verdict concerning breach of implied warranty of merchantability. Third, Steele asserts that the district court erred in not equalizing peremptory strikes between Steele and the defendants during jury selection.

## IV. ANALYSIS

### 1. ENCORE'S APPEAL

As noted above, the only issue which we need to address to resolve Encore's appeal is whether the district court erred in instructing the jury that the conduct of Fuchs could not be considered in determining whether Encore was liable for negligence. Resolution of this limited issue requires us to address general propositions of law concerning alleged error in instructing the jury and requires us to consider the parties' arguments regarding how the jury should have been instructed about alleged negligence of a third person who is not a party to the lawsuit. As noted above, Fuchs was named as a defendant in this action solely for subrogation purposes and was not an active participant in the trial, as no claim for liability was asserted against Fuchs. In this regard, we treat Fuchs as a "nonparty" for our analysis of this issue. Additionally, we must consider what effect, if any, there is when the nonparty third person is the plaintiff's employer.

### (a) Parties' Arguments

We address Encore's assertion that the district court erred in submitting jury instruction No. 19. Instruction No. 19 provides: "In determining the liability for plaintiff's injuries, you may not consider the conduct of plaintiff's employer, Fuchs Machinery." Although Steele failed to object at the jury conference to instruction No. 19, the Nebraska Supreme Court has held that a trial court, whether requested to do so or not, has a duty to instruct the jury on the proper law of the case, and failure to do so constitutes prejudicial error. *Heye Farms, Inc. v. State*, 251 Neb. 639, 558 N.W.2d 306 (1997); *McLaughlin v. Hellbusch*, 251 Neb. 389, 557 N.W.2d 657 (1997). Therefore, we address Steele's argument.

Encore argues that there was evidence regarding Fuchs' negligence. Encore asserts that in light of that evidence, instruction

No. 19 was prejudicial error, because if Fuchs was the sole proximate cause of Steele's injury, then Encore could not have been a proximate cause of the injury. As a result, Encore could not be found to be negligent.

Encore also argues that the error in submitting instruction No. 19 was compounded by the district court's failure to generally instruct the jury that it must return a verdict in favor of Encore if it concluded the sole proximate cause of the accident was the negligence of someone other than Encore. Encore did not properly assign the failure to give such an instruction as error, and, therefore, it is not properly before us. See *Lange v. Crouse Cartage Co.*, 253 Neb. 718, 572 N.W.2d 351 (1998). We discuss this argument only to the extent necessary to resolve whether the submission of instruction No. 19 was proper.

■ Steele argues that the negligence of Fuchs could not have been the sole proximate cause of his injury and that Fuchs' liability is limited under workers' compensation law. Steele argues that the Nebraska Workers' Compensation Act, Neb. Rev. Stat. § 48-101 et seq. (Reissue 1993), provides the only remedy against an employer when an employee is injured in his or her employment. We note that Encore is not seeking indemnification or contribution from Fuchs. See *Vangreen v. Interstate Machinery & Supply Co.*, 197 Neb. 29, 246 N.W.2d 652 (1976) (holding that Nebraska Workers' Compensation Act bars action by third party tort-feasor against employer for contribution or indemnity based on claim arising from injury).

### (b) Standard of Review
■ Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party. *Fales v. Books*, 253 Neb. 491, 570 N.W.2d 841 (1997); *Bahrs v. R M B R Wheels, Inc.*, 6 Neb. App. 354, 574 N.W.2d 524 (1998). In determining whether the jury was properly instructed, all the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d

341 (1998); *Kent v. Crocker*, 252 Neb. 462, 562 N.W.2d 833 (1997); *Bahrs, supra.*

### (c) Resolution

Encore produced evidence at trial which, if believed by the jury, established that Fuchs did not have a safety program, did not have any policy concerning "locking out" the disconnect box, and had not provided any instruction or directive on proper lockout procedures. This evidence raised an issue as to whether Fuchs, as a nonparty, was the sole proximate cause of Steele's injuries. Nebraska Jury Instructions contemplate the issue of a nonparty's being the sole proximate cause of a plaintiff's injuries. NJI2d Civ. 3.44 is designed for that situation and provides:

> The defendant claims that (insert name of or phrase identifying nonparty third person)'s conduct was the only proximate cause of the (occurrence, accident, collision, fall, et cetera). By doing so, the defendant is simply denying that (his, her, its) conduct was a proximate cause of the (occurrence, accident, collision, fall, et cetera). Remember, the plaintiff must prove that the defendant's negligence was a proximate cause of the (occurrence, accident, collision, fall, et cetera).

In accordance with NJI2d Civ. 3.44, the general rule in Nebraska is that where it is claimed that the conduct of a nonparty is the sole proximate cause of an accident, the jury should be advised that if it finds that the nonparty is the sole proximate cause, then its verdict should be for the defendant. See, *Weiseth v. Karlen*, 206 Neb. 724, 295 N.W.2d 103 (1980); *Whittington v. Nebraska Nat. Gas Co.*, 177 Neb. 264, 128 N.W.2d 795 (1964). Compare, *Tapp, supra* (holding it is permissible to instruct jury that third party who is not party to action is negligent as matter of law). This is merely a way of instructing the jury that it is appropriate for a defendant to deny proximate cause by introducing evidence that someone else was the sole proximate cause.

Although the above-stated rule has been the general rule in Nebraska for quite some time, see, e.g., *Styskal v. Brickey*, 158 Neb. 208, 62 N.W.2d 854 (1954), the present situation is unique and presents an issue of first impression in Nebraska for one

reason: The nonparty third person whose negligence is alleged to have been the sole proximate cause is the plaintiff's employer. Although we acknowledge that employers cannot be held liable in tort for injuries to employees covered by the Nebraska Workers' Compensation Act, we do not, as Steele urges, conclude that a defendant is therefore barred from arguing in a negligence action that the employer's negligence was actually the sole proximate cause of the employee's injuries.

■ Regardless of the plaintiff's not being entitled to tort compensation from the employer, if the employer's actions are the sole proximate cause of the employee's injuries, then it follows that the defendant's conduct is not a proximate cause, and the defendant should be entitled to argue and have the jury instructed accordingly. Numerous other courts, both federal and state, have acknowledged that evidence of an employer's negligence is admissible and that appropriate jury instructions are required if the evidence is such that a jury could find that the employer's negligence is the sole proximate cause of the employee's injuries. See, *McClish v. Niagara Machine & Tool Works*, 266 F. Supp. 987 (S.D. Ind. 1967); *Gatlin v. Cooper Tire & Rubber Co.*, 252 Ark. 839, 481 S.W.2d 338 (1972); *Wagner v. Clark Equip. Co.*, 243 Conn. 168, 700 A.2d 38 (1997); *Chumbley v. Dreis and Krump Mfg. Co.*, 521 N.W.2d 192 (Iowa App. 1993); *Caulfield v. Elmhurst Contracting Co.*, 268 A.D. 661, 53 N.Y.S.2d 25 (1945).

Because we conclude that the evidence adduced at trial concerning Fuchs' negligence could have supported a jury determination that Fuchs, a nonparty, was the sole proximate cause of Steele's injuries, Encore was entitled to argue and have the jury consider that Steele had not proved proximate cause. Accordingly, the court erred in instructing the jury specifically that Fuchs' conduct could not be considered. We therefore reverse, and remand the matter for a new trial consistent with this opinion.

## 2. STEELE'S CROSS-APPEAL

### (a) Deposition Costs

In his cross-appeal, Steele asserts that the district court erred in failing to award him all his deposition costs against Encore.

Neb. Rev. Stat. § 25-1708 (Reissue 1995) conditions Steele's right to recover costs on his receiving a favorable judgment. Given our above disposition of Encore's appeal, it is unnecessary to reach this assigned error.

### (b) Directed Verdict

Steele also asserts that the district court erred in granting Coltec's motion for directed verdict on Steele's claim of breach of implied warranty of merchantability. Steele argues that the implied warranty of merchantability claim should have been submitted to the jury because the evidence showed that the machine was unreasonably dangerous and defectively designed. Steele argues that Coltec failed to consider the dangers posed when servicing the machine.

A directed verdict is proper at the close of all the evidence only where reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, where an issue should be decided as a matter of law. *Martin v. Roth*, 252 Neb. 969, 568 N.W.2d 553 (1997); *World Radio Labs. v. Coopers & Lybrand*, 251 Neb. 261, 557 N.W.2d 1 (1996). Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *Mandolfo v. Chudy*, 253 Neb. 927, 573 N.W.2d 135 (1998); *Kindred v. City of Omaha Emp. Ret. Sys.*, 252 Neb. 658, 564 N.W.2d 592 (1997).

The Nebraska Uniform Commercial Code (U.C.C.) provides an implied warranty that goods shall be merchantable when the seller is a merchant. Neb. U.C.C. § 2-314 (Reissue 1992). There is no dispute that Coltec is a merchant under the U.C.C. Under the U.C.C., the goods must be fit for the ordinary purposes for which such goods are used in order to be merchantable. *Id.* See, also, *Laird v. Scribner Coop*, 237 Neb. 532, 466 N.W.2d 798 (1991); *Mennonite Deaconess Home & Hosp. v. Gates Eng'g Co.*, 219 Neb. 303, 363 N.W.2d 155 (1985). The Supreme Court has stated:

> "[T]here must be proof that there was a deviation from the standard of merchantability at the time of sale and that such deviation caused the plaintiff's injury both proximately and in fact. Thus, a breach of the warranty has been

found to exist where the item sold failed to perform adequately because of a lack of quality inherent within the item itself."

*Delgado v. Inryco, Inc.*, 230 Neb. 662, 668, 433 N.W.2d 179, 183-84 (1988), quoting *O'Keefe Elevator v. Second Ave. Properties*, 216 Neb. 170, 343 N.W.2d 54 (1984). Misuse of a product is a defense to a breach of warranty claim. See *Hawkins Constr. Co. v. Matthews Co., Inc.*, 190 Neb. 546, 209 N.W.2d 643 (1973), *overruled on other grounds, National Crane Corp. v. Ohio Steel Tube Co.*, 213 Neb. 782, 332 N.W.2d 39 (1983). Failure to follow plain and unambiguous instructions is a misuse of the product. *Erickson v. Monarch Indus.*, 216 Neb. 875, 347 N.W.2d 99 (1984).

In the case before us, the evidence did not show that the air compressor was unfit for its ordinary purposes. The evidence did not show that the air compressor was incapable of being safely operated and serviced if the manufacturer's instructions were followed. Attached to the side of the air compressor in large bold letters, among other cautions and warnings, was the following warning: "DISCONNECT ALL POWER SOURCES AND DISCHARGE CAPACITORS BEFORE TOUCHING ANY INTERNAL PARTS." Another warning indicated "DO NOT open this control enclosure or service this unit until the power is disconnected AND LOCKED OUT!" According to the evidence, the above instruction was not followed prior to servicing the air compressor. As a result, the misuse of the air compressor is a defense to Steele's claim of breach of implied warranty of merchantability. The district court did not err in granting Coltec's motion for directed verdict in this regard.

### (c) Peremptory Challenges

Finally, Steele asserts that the district court erred in the allotment of peremptory challenges during jury selection. It appears from the record that Steele, Encore, and Coltec were each afforded three peremptory challenges. Prior to jury selection, Steele filed a "Motion to Equalize Strikes," in which he sought to have the court afford him the same number of peremptory strikes as Encore and Coltec combined. The court denied this motion.

We are not able to reach the merits of Steele's claim, however, because he has not provided an adequate record on appeal to support his contention. The record before us does not contain any evidence that Steele exercised all of the peremptory challenges afforded him. A similar issue was presented in *Petsch & McDonald v. Hines*, 110 Neb. 1, 192 N.W. 963 (1923). In *Petsch*, the party alleging injury by the allotment of peremptory strikes asked the lower court to make a record demonstrating that the party exercised every peremptory challenge allowed, but such a request was denied. Despite the party's attempt to make an adequate record, the Nebraska Supreme Court held that the ruling could not be held prejudicial because the record did not disclose that all peremptory challenges were utilized. The present case contains no record concerning the number of peremptory challenges Steele exercised, and we similarly cannot hold the court's actions to be prejudicial. Additionally, the issue will not arise again on remand, because on remand, Steele and Encore will be the only two parties remaining.

## V. CONCLUSION

Because we conclude that the district court erred in instructing the jury and because that error was prejudicial, we reverse, and remand the case for a new trial consistent with this opinion.

REVERSED AND REMANDED FOR A NEW TRIAL.