YVETTE DOLLISON, APPELLANT,
v. MERCY SERVICES CORP., APPELLEE.
584 N.W. 2d 674

Filed September 1, 1998. No. A-97-225.

Catherine Mahern, of Creighton Legal Clinic, for appellant.

Michael S. Degan, of Kennedy, Holland, DeLacy & Svoboda, for appellee.

HANNON, IRWIN, and INBODY, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Yvette Dollison appeals from an order of the district court which affirmed a judgment of the county court in this action which was transferred from the small claims court to the county court upon request of defendant, Mercy Services Corp. On appeal, Dollison challenges the county court's denial of her request for a jury trial, the county court's dismissal of her negligence action, the admission of allegedly irrelevant evidence, and the amount of damages awarded by the county court. Because we conclude that the district court erred in affirming the county court's grant of Mercy Services' motion for directed verdict, but was correct in other regards, we affirm in part and in part reverse and remand the case with directions.

## II. BACKGROUND

Dollison was a resident of the Mason School Apartments in Omaha. At the relevant times, the Mason School Apartments were being managed by Mercy Services for a parent corporation, Mercy Housing, Inc.

According to the record, in late July and August 1995, the Mason School Apartments were the target of numerous burglaries. Dollison's apartment was burglarized on August 8. According to Dollison, the following items were stolen from her apartment: a Sega video game system, four video games, a tote bag, school clothes belonging to Dollison's son, and a cordless phone. Dollison valued the stolen items at several hundred dollars. Dollison hired a locksmith to replace the locks in her apartment. According to Dollison, because of lost wages and the cost of the locksmith, changing her locks cost her approximately $125.

Dollison initially filed a suit against Mercy Services in the small claims court. Mercy Services transferred the case to the county court. Dollison then filed an amended petition, alleging three causes of action. Dollison alleged that Mercy Services had been negligent, that Mercy Services had breached an express contract by violating a provision of the lease, and that Mercy Services had breached an implied contract to provide a reasonably safe place to live, in contravention of the Uniform Residential Landlord and Tenant Act, Neb. Rev. Stat. § 76-1401 et seq. (Reissue 1993 & Cum. Supp. 1994). Dollison also requested in the amended petition that the case be heard by a jury, which request was denied by the county court.

At the conclusion of Dollison's evidence, the court granted a directed verdict in favor of Mercy Services on the negligence cause of action. At the conclusion of the entire case, the court generally found in favor of Dollison on the breach of contract causes of action and awarded Dollison $123.60.

Dollison appealed to the district court, which affirmed the judgment of the county court. Dollison then filed this timely appeal.

### III. ASSIGNMENTS OF ERROR
On appeal, Dollison has assigned four errors. First, Dollison asserts that the county court erred in denying her request for a jury trial. Second, Dollison asserts that the county court erred in dismissing her negligence action. Third, Dollison asserts that the county court erred in admitting irrelevant evidence. Finally, Dollison asserts that the county court erred in failing to award general damages.

## IV. ANALYSIS

### 1. Jury Trial

Dollison initially filed this action in the small claims court. Mercy Services transferred the case to the county court pursuant to Neb. Rev. Stat. § 25-2805 (Reissue 1995). Thereafter, Dollison filed an amended petition, which included a "Demand for Jury Trial." The county court denied Dollison's demand, and the case was tried to the court. On appeal, Dollison asserts that she was entitled to a jury trial in this case.

Section 25-2805 provides that "[a]ny defendant in an action or such defendant's attorney may transfer the case to the regular docket of the county court by giving notice to the court at least two days prior to the time set for the hearing." Section 25-2805 further provides that "any defendant or such defendant's attorney may demand trial by jury." Mercy Services argues on appeal that the statute does not authorize a plaintiff to demand a jury when the case has been transferred to the county court.

The general rules of statutory interpretation in Nebraska provide that in the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning, and when the words of a statute are plain, direct, and unambiguous, no interpretation is necessary or will be indulged to ascertain their meaning. *Memorial Hosp. of Dodge Cty. v. Porter*, 251 Neb. 327, 557 N.W.2d 21 (1996); *Bennett v. J. C. Robinson Seed Co.*, ante p. 525, 583 N.W.2d 370 (1998). It is not within the province of a court to read anything plain, direct, and unambiguous out of a statute. *Memorial Hosp. of Dodge Cty. v. Porter*, 4 Neb. App. 716, 548 N.W.2d 361 (1996). An appellate court will, if possible, give effect to every word, clause, and sentence of a statute, since the Legislature is presumed to have intended every provision of a statute to have a meaning. *Id.*; *Gatewood v. Powell*, 1 Neb. App. 749, 511 N.W.2d 159 (1993).

In light of the foregoing principles, we conclude that Dollison was not entitled to request a jury trial in this action. The plain, direct, and unambiguous language of § 25-2805 clearly indicates that *a defendant* may transfer the case from small claims court to county court and that *a defendant* may request a jury

trial when making a motion for a transfer. To hold that a plaintiff may also request a jury trial when the case has been transferred would not only fail to give effect to the plain, direct, and unambiguous language of the statute but would actually read the word "defendant" entirely out of the statute. We decline to so hold, and the lower court did not err in concluding that Dollison was not entitled to a jury trial in this case.

Dollison argues in support of her contention that she should be entitled to a jury trial that she had a common-law right to a jury trial when the constitutional guarantee of jury trials went into effect in Nebraska. See Neb. Const. art. I, § 6. As such, she asserts that her common-law right must be preserved. Dollison has not provided us with any authority to suggest that there ever existed a common-law right to a jury trial in cases transferred from a small claims court to a county court. In fact, we note that the statute creating small claims courts did not take effect until 1972.

Dollison also points to the provisions of Neb. Rev. Stat. § 25-2705 (Reissue 1995) to argue that all parties in county court are entitled to a jury trial, with limited exceptions. Our reading of § 25-2705, however, leads us to conclude that the provision applies only to actions originally filed in the county court. Section 25-2705 provides that the demand for jury trial "shall be in writing and shall be filed on or before answer day except as otherwise provided in section 25-2805." As noted above, § 25-2805 provides that a defendant may demand a jury trial in county court when the defendant files a motion to have a case transferred from the small claims court. As such, the general provision of § 25-2705 that "either party to any case in county court" may demand a jury trial pertains only to actions originally filed in county court.

Finally, Dollison argues that judicial efficiency dictates that a plaintiff be able to request a jury in this procedural situation. Dollison argues that a plaintiff could secure the right to a jury by simply dismissing the case after the defendant transfers it and then refiling it as an original filing in county court to take advantage of § 25-2705. Although Dollison may be correct in asserting that a plaintiff could secure a jury trial by dismissing and refiling, and although such may indicate inefficiency, this

court is not free to legislate merely to achieve a more efficient result. Dollison's arguments are without merit.

## 2. DISMISSAL OF NEGLIGENCE ACTION

At the conclusion of Dollison's evidence, Mercy Services moved for a directed verdict. The court granted the directed verdict with respect to Dollison's cause of action for negligence but denied the motion with respect to Dollison's causes of action for breach of contract.

■ In reviewing a trial court's ruling on a motion for directed verdict, an appellate court treats the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. *Blose v. Mactier*, 252 Neb. 333, 562 N.W.2d 363 (1997); *Bahrs v. R M B R Wheels, Inc.*, 6 Neb. App. 354, 574 N.W.2d 524 (1998). The party against whom a motion for directed verdict is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Id.*; *Suiter v. Epperson*, 6 Neb. App. 83, 571 N.W.2d 92 (1997). In order to sustain a motion for directed verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion from the evidence. *Blose v. Mactier, supra*; *Bahrs v. R M B R Wheels, Inc., supra*. If there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law. *Suiter v. Epperson, supra*.

The evidence in this case indicates that at least three other apartments in the building were burglarized within approximately 1 week prior to Dollison's burglary. Each of the three prior break-ins was accomplished without force. Each of the tenants from these three apartments testified that he or she believed somebody had entered his or her apartment with a key, and at least one of them testified that she reported to Mercy Services that she believed somebody had entered her apartment with a key.

One of the tenants of the building, Orvella Jones, testified that she had needed a replacement key in early July 1995. Jones resided in apartment No. 207, but the replacement key which

she was given was stamped with 107. Jones testified that her ex-boyfriend was ultimately arrested for the burglaries and that some of the stolen property was located in her apartment.

Although Dollison's witnesses testified that they believed a master key had been used to enter their apartments, none of them was able to testify that he or she had seen any such key being used to burglarize the apartments. Jones conceded that she never tried the 107 key in any door other than her own. Dollison presented evidence in a police report, however, which indicated that the police spoke to a resident manager of the apartment building after a subsequent burglary in late August 1995. The resident manager informed the police that "one of the apartment maintenance gave Jones, Orvilla [sic] at apartment #207 a master key to the building."

Our review of the evidence in this case leads us to conclude that the county court erred in directing a verdict on the issue of negligence. The evidence was such that, giving Dollison the benefit of every reasonable inference, a reasonable mind could conclude that Mercy Services was negligent in giving out a master key; that the master key was used to enter Dollison's apartment; and, therefore, that Mercy Services' negligence was a proximate cause of the damage suffered by Dollison. As such, the issue should not have been decided as a matter of law.

### 3. ADMISSION OF EVIDENCE

Dollison asserts that the county court admitted improper evidence concerning the "socio-economic status of Ms. Dollison and other tenants" because the court stated near the end of the trial that "[a]ny landlord that takes one of these types of properties, where they know they're going into a bad situation . . . we give them a little bit more leeway." Brief for appellant at 27. Our review of the record indicates that there was no evidence about Dollison's or anyone else's "socio-economic" status. The only testimony cited by Dollison on appeal was the testimony by a representative of Mercy Services that Mercy Services' parent corporation's main mission " 'is to provide decent affordable housing for low income families[.]' " *Id.* at 28. There is nothing in the record to suggest that "[t]he verdict of the trial court was the result of prejudice in favor of a philanthropic

institution," *id.*, or that the county court acted with "partiality, bias, and prejudice," *id.* at 27. We will not further address this meritless argument.

### 4. DAMAGES AWARD

Finally, Dollison asserts that the county court erred in not awarding her general damages. The county court found generally in Dollison's favor on the breach of contract causes of action and awarded her $123.60. The district court found that the county court had "limited plaintiff's damages to her repairs and loss of wages in being available when the repairs were undertaken." Dollison asserts that she was entitled to damages for the property stolen from her apartment as well.

■ Upon our review of the county court's order, we cannot conclude that the county court awarded Dollison damages specifically for the costs incurred in having her locks changed, as the district court found. The county court was not asked to make any specific findings, and the court's order merely indicates that the court "hereby finds generally in favor of the plaintiff in the amount of $123.60, plus taxable court costs herein." Although Dollison's testimony indicated that it cost her approximately $50 to have the locks changed and that she lost approximately $75 in wages, it would be mere speculation to conclude that the court therefore awarded her damages specifically and only for those costs. The amount of damages is a matter solely for the fact finder, whose decision will not be disturbed on appeal if supported by the evidence. *Talle v. Nebraska Dept. of Soc. Servs.*, 253 Neb. 823, 572 N.W.2d 790 (1998); *Anderson/ Couvillon v. Nebraska Dept. of Soc. Servs.*, 253 Neb. 813, 572 N.W.2d 362 (1998); *Eledge v. Farmers Mut. Home Ins.*, 6 Neb. App. 140, 571 N.W.2d 105 (1997). Because there are no specific findings by the county court regarding how the $123.60 figure for the breach of contract causes of action was arrived at, we cannot conclude that the award was erroneous. This assigned error is without merit.

### V. CONCLUSION

Because we conclude that the county court erred in directing a verdict on the negligence claim, the district court's order

affirming the county court's judgment is reversed, and the case is remanded with directions to reverse the judgment and remand the case to the county court for further proceedings in conformity with this opinion. The remainder of the court's judgment is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

HANNON, Judge, concurring in part, and in part dissenting.

I must respectfully dissent from that portion of the opinion which holds that Dollison is not entitled to a jury trial. Article I, § 6, of the Constitution of the State of Nebraska provides in significant part: "The right of trial by jury shall remain inviolate . . . ." I agree that the Legislature may and does provide procedures whereby litigants may waive this constitutional right. Neb. Rev. Stat. § 25-2705 (Reissue 1995), requiring a demand for a jury trial before answer day, is the clearest example. The statutes do not provide that by commencing an action in small claims court the plaintiff waives his or her right to trial by jury, but, rather, provide: "All matters in the Small Claims Court shall be tried to the court without a jury." Neb. Rev. Stat. § 25-2805 (Reissue 1995).

This case was transferred out of the small claims court by the defendant, and therefore, it was not tried in the small claims court. I am inclined to think the Legislature could provide that by filing an action in small claims court the plaintiff waives the right to trial by jury. Instead, the Legislature saw fit to provide only that trials in small claims court shall be without a jury. I also recognize that the existing statutes do not provide a time limit for a plaintiff to request a jury trial after a defendant has caused a case to be transferred out of small claims court. However, I refuse to believe that a constitutional right can be lost inadvertently merely because a statute could have been drafted to provide for the waiver of that right. In the absence of a statutory limitation, I think the plaintiff would have a reasonable time to demand a trial by jury.