Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/28/2019 09:07 AM CDT

Grant Jonas, appellant, v. Brent Willman, M.D., and
Doctors of Children - Lincoln, P.C., appellees.

___ N.W.2d ___

Filed May 21, 2019.    No. A-17-1016.

1. **Jury Instructions.** Whether the jury instructions given by a trial court are correct is a question of law.

2. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.

3. **Directed Verdict: Appeal and Error.** In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence.

4. **Trial: Courts: Juries: Appeal and Error.** A trial court's response to a question posed by the jury is reviewed for an abuse of discretion.

5. **Motions for New Trial: Appeal and Error.** An appellate court reviews a denial of a motion for new trial for an abuse of discretion.

6. **Negligence: Trial.** Generally, it is error to submit a general allegation of negligence to the jury.

7. **Pretrial Procedure: Parties.** A pretrial order is binding upon the parties.

8. **Pretrial Procedure: Evidence.** In relation to evidence, the pretrial conference is designed for and primarily used to restrict evidence to the issues formulated, secure admissions or stipulations, and avoid unduly cumulative evidence and the necessity of proving foundation in regard to clearly competent evidence.

9. **Jury Instructions: Pleadings: Evidence.** A litigant is entitled to have the jury instructed upon only those theories of the case which are

presented by the pleadings and which are supported by competent evidence.

10. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction.

11. **Malpractice: Physicians and Surgeons: Proximate Cause: Damages.** In the medical malpractice context, the element of proximate causation requires proof that the physician's deviation from the standard of care caused or contributed to the injury or damage to the plaintiff.

12. **Physician and Patient: Negligence.** Nebraska does not recognize the loss-of-chance doctrine.

13. **Trial: Evidence: Juries.** Before evidence is submitted to a jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it and upon whom the burden is imposed.

14. **Malpractice: Physicians and Surgeons: Expert Witnesses: Words and Phrases.** Medical expert testimony regarding causation based upon possibility or speculation is insufficient; it must be stated as being at least "probable," in other words, more likely than not.

15. **Trial: Evidence: Proof.** The burden of proof is not sustained by evidence from which a jury can arrive at its conclusions only by guess, speculation, or conjecture.

16. **Trial: Juries.** The trial judge is in the best position to sense whether the jury is able to proceed with its deliberations and has considerable discretion in determining how to respond to communications indicating that the jury is experiencing confusion.

17. **Rules of the Supreme Court: Appeal and Error.** Under Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014), a party filing a cross-appeal must set forth a separate division of the brief prepared in the same manner and under the same rules as the brief of appellant.

Appeal from the District Court for Lancaster County: John A. Colborn, Judge. Affirmed.

Diana J. Vogt, of Sherrets, Bruno & Vogt, L.L.C., and Patrick J. Cullan and Joseph P. Cullan, of Cullan & Cullan, L.L.C., for appellant.

Patrick G. Vipond, William R. Settles, and John M.Walker, of Lamson, Dugan & Murray, L.L.P., for appellees.

Riedmann, Bishop, and Arterburn, Judges.

Riedmann, Judge.

## I. INTRODUCTION

Grant Jonas brought a medical malpractice action alleging that his pediatrician failed to diagnose and treat him for congenital bilateral undescended testicles. Following a jury verdict in favor of the defendants, Jonas appeals, arguing that the district court erred in instructing the jury, answering questions from the jury, and denying his motion for a new trial. The defendants attempt to cross-appeal from the district court's denial of their motion for sanctions. For the reasons set out below, we affirm the order of the district court in all respects.

## II. BACKGROUND

Jonas brought a medical malpractice suit against Brent Willman, M.D., and his professional practice, Doctors of Children - Lincoln, P.C., in 2013. Jonas alleged that he was born with congenital bilateral cryptorchidism and that Willman was negligent in not diagnosing, treating, or referring him to a specialist for his condition. Congenital bilateral cryptorchidism was defined at trial as testicles that had not descended at birth. Thus, Jonas claimed that he was born with testicles that did not descend and that Willman did not recognize and treat his condition.

The defendants countered Jonas' allegations by attempting to establish that Jonas had descended testicles at birth, but his testicles later ascended out of his scrotum. One of their experts explained that "[an] ascended testicle is a testicle that was descended at birth, and then at some point it ascended [and] can no longer [be brought] into the scrotum." The defendants argued that Jonas did not suffer any injuries as a result of his ascended testicles.

## 1. Jonas' Medical History

Jonas was born in July 1997. The day after he was born, he was examined by Willman, who found Jonas' testicles to be descended and in the scrotum. Willman again examined Jonas when he was 4 days old and noted that his testicles were descended. Before leaving the hospital, Jonas was also examined by Dr. Brad Brabec, who found Jonas' testicles to be normal.

Jonas' 2-month checkup was performed by Willman, and his testicles appeared normal and descended. Dr. Barton Bernstein performed Jonas' 4-month checkup and noted on Jonas' medical chart that he was a normal, healthy child. Jonas then saw Willman regularly for checkups, and on each visit, Willman found Jonas' testicles to be normal and descended. Additional medical professionals examined Jonas while he was a young child, including Kathy Carter, a nurse practitioner, who examined him when he was 2 years old, and Dr. Susan Johnson, who examined him when he was 6 years old, and each found his testicles to be descended and in his scrotum.

In 2003, Jonas was examined by Erin Hoffman, a new physician assistant who worked for Willman. While examining Jonas, Hoffman had difficulty locating his testicles due to extra fat tissue in his genital region. Being inexperienced in these examinations, Hoffman requested that Willman assist her, which he did, and Hoffman was able to "visualize" Jonas' testicles. Between 2003 and 2008, Jonas was seen regularly by Willman and Hoffman, and there were no concerns that his testicles had not descended.

In 2008, Hoffman became concerned that Jonas' penis was abnormally small and that his genitalia were not developing at the same rate as the rest of his body. However, after being informed of Hoffman's concerns, Willman examined Jonas and found Jonas' testicles to be descended. Willman ran tests to determine whether Jonas had started puberty, and the tests indicated that he had low testosterone and had not yet started puberty. In 2009, Jonas' mother contacted Willman with

concerns about Jonas' penis size and testicles. Willman referred Jonas to Dr. Jean-Claude Desmangles, an endocrinologist, to evaluate him for delayed puberty.

In March 2009, Desmangles performed a physical examination on Jonas and could not locate his testicles. Desmangles then ordered an ultrasound examination of Jonas, which indicated that his testicles were not in his scrotum. Jonas was referred to Dr. Euclid DeSouza, a urologist, who diagnosed him with bilateral undescended testicles at the age of 11. DeSouza performed an orchiopexy, which is a surgery to bring testicles into the scrotum. Prior to his surgery, Jonas was examined by Hoffman for a physical to ensure he was healthy enough for the procedure. At the same visit, Hoffman performed a 12-year-old checkup on Jonas and indicated on his medical chart that his testicles were normal at that time.

After surgery, Jonas was informed that he was at a higher risk of testicular cancer and likely would have fertility issues due to his undescended testicles. He subsequently underwent testing where it was determined that his sperm count rendered him infertile.

## 2. PRETRIAL PROCEDURE

In 2013, Jonas' parents, individually and as next friends of Jonas, filed a complaint in the district court for Lancaster County against Willman; Complete Children's Health, P.C.; and Doctors of Children - Lincoln, alleging that the defendants were negligent in failing to identify Jonas' bilateral undescended testicles and in failing to timely refer him to specialty care for this condition. Complete Children's Health was subsequently dismissed from the case.

After multiple continuances and lengthy discovery, a pretrial conference was held in June 2015. Prior to the pretrial conference, the parties were ordered to submit a pretrial conference memorandum. Jonas and his parents submitted their memorandum on June 15, which stated, in relevant part: "On July . . . 1997 Grant Jonas was born. Plaintiffs contend [Jonas]

was born with a medical condition known as a congenital bilateral cryptorchidism."

On September 2, 2015, Jonas' parents were dismissed after the defendants filed a motion for partial summary judgment, arguing that the parents' claims were barred by the applicable statute of limitations, and the parents agreed. The case proceeded with Jonas, who was no longer a minor, as the sole plaintiff.

Trial on Jonas' claim was held in February 2017.

### 3. Trial

During Jonas' opening statement, his counsel repeatedly stated that Jonas was born with undescended testicles, which caused his injuries. Specifically, counsel stated:

> He was diagnosed, at age 11, with undescended testicles at birth. Let me say that again. His diagnosis from age 11 until today, his diagnosis is undescended testicles. Words matter. That matters, because that diagnosis is going to try to be changed here in court, but that is his current diagnosis. And if his current diagnosis is true and accurate, then our case is made for us, because if his testicles were undescended from birth, it should have been caught.

Jonas' counsel later stated, "A diagnosis, not some ascending testicles, some vanishing testicle theory, his diagnosis at that stage is undescended testicles. . . . His diagnosis, undescended testicles. That means from birth, that's what that term means." His counsel continued to emphasize that Jonas had undescended testicles from birth by explaining, "this diagnosis, undescended testes, means from birth, they've never been in the scrotum." Finally, while discussing Jonas' alleged injuries, his counsel stated, "And the only cause of testicular dysfunction that we're aware of in [Jonas] is the fact that these things were never descended."

Jonas' first witness was DeSouza, the urologist who performed Jonas' surgery to bring his testicles into the scrotum.

DeSouza testified that Jonas' right testicle was located in his abdomen and that his left testicle was located in the inguinal canal, above the scrotum. DeSouza opined that it was unlikely that either testicle was ever in the scrotum because the gubernaculum, the structure that brings a male's testicles to his scrotum, did not lead to Jonas' scrotum. During DeSouza's testimony, Jonas' counsel continued to attempt to demonstrate that Jonas was born with bilateral undescended testicles, even attempting to impeach DeSouza when he opined that Jonas' left testicle may or may not have been descended at one point. DeSouza also indicated that Jonas' testicles were atrophic, or small, because they were located in his groin and inguinal canal, not the scrotum.

On cross-examination, DeSouza testified that he did not observe a hernia sac while he performed Jonas' surgery and that a hernia sac is usually present when there are undescended testicles. DeSouza also acknowledged that in his operative report, written directly after the surgery, he stated that Jonas' testicles were "anatomically normal."

Jonas next called Dr. Kevin Ferentz, a family physician, as an expert witness. Ferentz testified that Jonas was born with undescended testicles that were not diagnosed. Ferentz explained that there are increased risks of infertility and testicular cancer in a male who has undescended testicles. However, if undescended testicles are diagnosed and corrected at approximately 1 year of age, the male should not have any increased health risks. Ferentz stated that his opinion Jonas had undescended testicles since birth was based on Desmangles' medical reports and DeSouza's findings during surgery. It was Ferentz' opinion that Willman breached his duty of care because Willman indicated that he felt Jonas' testicles, but, based on DeSouza's findings during surgery, it was not possible that Jonas' testicles were ever in the scrotum. Finally, Ferentz opined that it was not possible for Jonas' testicles to descend, and then reascend into his body, because his gubernaculum did not reach his scrotum.

Jonas also called Dr. Dudley Danoff, a urologic surgeon, as an expert witness. Danoff concurred with Ferentz' opinion that Jonas was born with undescended testicles and that he was not diagnosed with bilateral undescended testicles until he was 11 years old. Danoff also opined that it was impossible for Jonas' testicles to have ever been in his scrotum. After reading the test results from Jonas' fertility test, Danoff testified that Jonas was infertile. Danoff further testified that the injuries Jonas suffered were proximately caused by the delayed diagnosis of his undescended testicles. Danoff indicated he did not believe the concept of ascending testicles was a "viable concept." Danoff further stated that not only did he not believe the concept of descending testicles that then ascend, but he could not "conceive" how that would happen.

Following Jonas' case in chief, the defendants moved for a directed verdict, which was denied by the court. The defendants then presented their case, attempting to demonstrate that Jonas had descended testicles at birth that later ascended. They elicited testimony from Bernstein, Brabec, Johnson, Carter, and Hoffman who all testified that Jonas' testicles were descended when they examined him. Willman also testified Jonas' testicles were descended when he was born. He further stated that it was virtually impossible for all the medical professionals who examined Jonas to miss his undescended testicles. Willman conceded that he examined Jonas in 2008 prior to referring him to Desmangles and that it was possible he did not feel Jonas' testicles at that visit.

The defendants also called two expert witnesses to testify on their behalf. Dr. John Weiner, a pediatric urologist, testified that it was possible for a male to have ascending testicles, meaning testicles that retreat into the body after being descended at birth. Weiner further testified that "the risk of infertility and cancer are well known for undescended testicles from birth"; however, he stated that there is no medical literature stating that there is an increased risk of infertility

or cancer in ascended testicles. He stated that although the exact cause of increased risk of infertility and cancer for undescended testicles is unknown, most people believe that there is something "wrong" with the testicle from the very beginning and that the testicle was not destined to be a "good testicle[]." Weiner opined that Jonas had no more risk of infertility or testicular cancer "than any other young boy" because he did not have undescended testicles. Weiner concluded that Jonas did not suffer an increased risk of cancer or infertility due to his ascended testicles.

Dr. Timothy Bukowski, another pediatric urologist, also testified that at birth, Jonas had descended testicles, and that as time went on, they ascended. He based this opinion in part upon the fact that there was no hernia sac found during surgery. According to Bukowski, with a "true undescended testicle," a hernia sac exists. Similar to Weiner, Bukowski opined that Jonas did not have an increased risk of infertility or cancer, explaining:

> [A] boy whose testicles are descended should function normally throughout puberty, throughout adulthood, provide normal fertility, normal pubertal growth, have a minimal risk of testicular cancer development. And as opposed to a boy whose testicles were not descended at birth, they have a higher risk of testis tumor development and a little bit higher rate of fertility problems.

Bukowski attributed the increased risk of infertility and cancer with undescended testicles to a defect in the testicle itself.

Prior to the end of the trial, the district court held a jury instruction conference. At the conference, Jonas' counsel objected to instruction No. 5, which contained the statement of the case. Instruction No. 5, as given to the jury, states:

### I. PLAINTIFFS' CLAIMS
#### A. ISSUES

The Plaintiff, Grant Jonas, claims that Defendant[s] Brent Willman, M.D. and Doctors of Children-Lincoln, P.C. were professionally negligent in the following ways:

> 1. In failing to timely identify Grant Jonas' unde-
> scended testicles;
>
> 2. In failing to timely manage Grant Jonas' unde-
> scended testicles;
>
> 3. In failing to arrange a proper referral for Grant
> Jonas' undescended testicles condition.
>
> Defendants deny all allegation of negligence; deny that
> the Plaintiff's injuries were proximately caused by the
> actions of Brent Willman, M.D. and Doctors of Children-
> Lincoln, P.C. and defendants employees; and deny the
> nature and extent of the Plaintiff's damages.

Jonas objected, believing that the evidence was broader than
the court's limitation of "undescended testes." Specifically,
Jonas' counsel argued that

> at any time testicles were not in the scrotum and a find-
> ing of normal was done, that, that was negligence. . . .
> And so it's the limitation in the term undescended testes
> in those three items, which we believe makes it prejudi-
> cial and confuses the jury, and is not in conformance with
> the evidence proffered at trial.

In conformity with an amended pretrial order, Jonas had
submitted a proposed jury instruction which stated:

### I. Plaintiffs' Claims
### A. ISSUES

> The Plaintiff, Grant Jonas, claims that Defendants
> Brent Willman, M.D. and Doctors of Children-Lincoln,
> P.C. were professionally negligent in the following ways:
>
> 1. In failing to timely identify Grant Jonas' unde-
> scended testicles[;]
>
> 2. In failing to timely manage Grant Jonas' unde-
> scended testicles[;]
>
> 3. In providing false assurance to the family of Grant
> Jonas regarding his testicular descent; and
>
> 4. In failing to arrange a proper referral for Grant
> Jonas' undescended testicle condition.
>
> 5. Otherwise to conform to the testimony at trial.

The district court overruled Jonas' objection, stating that instruction No. 5 was taken from Jonas' theory of the case and that there was not any expert testimony that associated Jonas' injuries with ascending testicles.

After the case was submitted to the jury, it posed two questions. First, the jury asked, "'Does the plaintiff's claim of undescended testicles mean both testicles, e.g., bilateral?'" Second, the jury asked, "'Does "undescended" mean from birth?['"] After consulting with counsel for both parties, the court answered "yes" to each question. The jury subsequently returned a verdict in favor of the defendants.

### 4. POSTTRIAL PROCEEDINGS

Following trial, Jonas moved for a new trial and the defendants sought sanctions against Jonas under Neb. Rev. Stat. § 25-824(4) (Reissue 2016). Jonas argued two grounds for a new trial. First, he asserted that Weiner testified regarding the absence of a hernia sac, which was an opinion that was not disclosed prior to trial. Second, he alleged that the use of the plural form of "testicle" in instruction No. 5 was erroneous. Jonas further argued that the evidence presented at trial would have allowed the jury to find in his favor if they had determined that only one testicle was undescended. Jonas also alleged that the court's error in issuing instruction No. 5 was compounded by the court's answer of "yes" to the jury's questions.

The district court denied Jonas' motion for a new trial. It found that Jonas failed to establish unfair surprise with Weiner's testimony. The court further stated that Jonas' expert witnesses did not present sufficient testimony to allow the court to submit his requested instruction, allowing the jury to find for him even if they found that only one testicle was undescended. The court indicated that Jonas was attempting to use expert testimony regarding bilateral undescended testicles to prove causation and damages resulting from one undescended testicle. Finally, the court stated that Jonas' claim that he was at an increased risk of cancer due to a single testicle being

undescended failed because it was based on a lost chance of survival, which the Nebraska Supreme Court had recently prohibited. See *Cohan v. Medical Imaging Consultants*, 297 Neb. 111, 900 N.W.2d 732 (2017), *modified on denial of rehearing* 297 Neb. 568, 902 N.W.2d 98. The district court also denied the defendants' motion for sanctions.

Jonas appeals, and the defendants attempt to cross-appeal.

## III. ASSIGNMENTS OF ERROR

Jonas assigns, restated and renumbered, that the district court erred in (1) refusing to give Jonas' proposed statement-of-the-case jury instruction; (2) entering a directed verdict against Jonas on damages arising from Willman's failure to diagnose, treat, or refer for ascended testicles; (3) answering jury questions which precluded the jury from acting as fact finder; (4) answering jury questions that indicated the court's opinion of the evidence and credibility of the witnesses; (5) using a "general dictionary" and conducting its own research in answering the jury questions; and (6) denying Jonas' motion for a new trial.

## IV. STANDARD OF REVIEW

[1,2] Whether the jury instructions given by a trial court are correct is a question of law. *Armstrong v. Clarkson College*, 297 Neb. 595, 901 N.W.2d 1 (2017). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id.*

[3] In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Lesiak v. Central Valley Ag Co-op*, 283 Neb. 103, 808 N.W.2d 67 (2012).

[4] A trial court's response to a question posed by the jury is reviewed for an abuse of discretion. See *In re Petition of Omaha Pub. Power Dist.*, 268 Neb. 43, 680 N.W.2d 128 (2004). See, also, *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015).

[5] An appellate court reviews a denial of a motion for new trial for an abuse of discretion. See *Hemsley v. Langdon*, 299 Neb. 464, 909 N.W.2d 59 (2018). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

## V. ANALYSIS

### 1. Jury Instruction No. 5

Jonas asserts that the district court erred in refusing to give the jury his proposed jury instruction on acts of negligence shown by the evidence and supported by the record. Relatedly, Jonas also argues that the district court erred by entering a "directed verdict" against him on damages arising from Willman's failure to diagnose, treat, or refer him for ascended testicles. Because our analysis of these assigned errors impacts Jonas' remaining errors, we address these errors first. We determine that the district court did not err in refusing to give Jonas' proposed jury instruction and that the court did not err in directing a verdict against Jonas on his claim of damages resulting from Willman's alleged failure to diagnose, treat, or refer Jonas for ascended testicles.

During the jury instruction conference, Jonas' counsel objected to instruction No. 5, which reads in pertinent part:

### I. PLAINTIFFS' CLAIMS

#### A. ISSUES

The Plaintiff, Grant Jonas, claims that Defendant[s] Brent Willman, M.D. and Doctors of Children-Lincoln, P.C. were professionally negligent in the following ways:

    1. In failing to timely identify Grant Jonas' undescended testicles;

    2. In failing to timely manage Grant Jonas' undescended testicles;

    3. In failing to arrange a proper referral for Grant Jonas' undescended testicles condition.

Jonas argued that the evidence presented during trial was broader than the specific acts contained in instruction No. 5 and that the instruction should have included a claim of general negligence against the defendants and should not have been limited to "undescended testes." The district court overruled the objection, stating that Jonas' expert witnesses testified Jonas' injuries and damages were based on undescended testicles from birth and that that had been Jonas' theory of the case since the beginning.

In his appeal, Jonas argues that the court erred in giving instruction No. 5, because the evidence presented at trial entitled Jonas to recover even if the jury found his testicles were descended at birth and then ascended, or if only one testicle was undescended. Jonas' argument is flawed for numerous reasons.

[6] First, Jonas' proposed instruction contained a catch-all allegation of negligence. Specifically, he sought to include a statement that defendants were negligent: "Otherwise to conform to the testimony at trial." Such an instruction is improper. See *Graham v. Simplex Motor Rebuilders, Inc.*, 189 Neb. 507, 203 N.W.2d 494 (1973) (stating it is error to submit general allegation of negligence to jury).

As to Jonas' argument that the court should not have limited the instruction to bilateral testicles or to undescended testicles, Jonas is attempting to expand the case beyond the allegations laid out in his complaint and pretrial memorandum. In his complaint, he specifically pled that the defendants were negligent in failing to identify Jonas' "bilateral undescended testicles." In his pretrial memorandum, Jonas again identified "congenital bilateral cryptorchidism," which

his experts defined as testicles that had not descended from birth. And pursuant to the amended pretrial conference order, he submitted a jury instruction setting forth the specific act of negligence in "failing to timely identify Grant Jonas' undescended testicles."

[7,8] A pretrial order is binding upon the parties. *Hall v. County of Lancaster*, 287 Neb. 969, 846 N.W.2d 107 (2014), *overruled on other grounds, Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017). In relation to evidence, the pretrial conference is designed for and primarily used to restrict evidence to the issues formulated, secure admissions or stipulations, and avoid unduly cumulative evidence and the necessity of proving foundation in regard to clearly competent evidence. See *Cockrell v. Garton*, 244 Neb. 359, 507 N.W.2d 38 (1993). The Supreme Court has affirmed the limiting of the issues at trial to those specified in the pretrial order and limiting the admission of evidence to the issues thus established. See, *Hall v. County of Lancaster, supra*; *Cockrell v. Garton, supra*.

Here, a pretrial conference was held by the district court in June 2015. The order specifically stated: "[T]his Order shall control the subsequent course of this action. A copy of each party's Pretrial Conference Memorandum shall be attached to and filed with this Order. Such Memoranda shall be deemed incorporated in this Order . . . ." In his pretrial conference memorandum, Jonas stated: "On July . . . 1997 Grant Jonas was born. Plaintiffs contend [Jonas] was born with a medical condition known as congenital bilateral cryptorchidism. . . . Plaintiffs contend that Defendant Dr. Willman failed to recognize[] and failed to diagnose [Jonas'] congenital bilateral cryptorchidism for over 11 years." Thus, according to Jonas' own pretrial memorandum, his claim was that he had congenital bilateral cryptorchidism, defined as undescended testicles from the time of birth. Therefore, Jonas could not change his theory of the case during the jury instruction conference to allow him relief for something other than undescended bilateral testicles from birth.

The Supreme Court has either affirmed a trial court's refusal to allow a plaintiff to modify his or her theory of the case to encompass alleged negligence, beyond what was laid out in the complaint, or reversed a trial court's decision to instruct the jury on issues that could mislead them. In *Hunt v. Methodist Hosp.*, 240 Neb. 838, 485 N.W.2d 737 (1992), the Supreme Court affirmed the trial court's refusal to give the plaintiff's requested instruction which would have shifted liability to a separate physician under the doctrine of respondeat superior, when the plaintiff's complaint was predicated on specific acts of negligence of another named physician.

In contrast, in *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994), the Supreme Court determined that the trial court erred in instructing the jury regarding alternate methods of localization for a spinal surgery because this was not at issue in the case. To the extent that it was raised, it was raised by the defendant. The Supreme Court found that the instruction could mislead the jury about the issues in the case, and thus, it reversed the judgment and remanded the cause for a new trial.

In the present case, Jonas requested that the court give an instruction which would hold the defendants liable for a greater swath of negligence than that on which Jonas predicated his case. Jonas' theory of the case from the time he filed his complaint was that he was born with bilateral undescended testicles and that Willman failed to diagnose and treat his condition for over 11 years. This theory remained the same throughout the pretrial process, throughout opening statements, and throughout examination of the witnesses. The defendants based their defense on Jonas' theory and attempted to show that Jonas was born with descended testicles that later ascended. Jonas' requested jury instruction would have allowed him to recover even if the jury found that he had only one undescended testicle or if they had ascended; yet, as discussed below, no evidence supported a finding that either of these resulted in injury to Jonas. The district court was correct to refuse the proposed instruction.

[9,10] Additionally, the evidence produced at trial did not warrant Jonas' requested instruction. A litigant is entitled to have the jury instructed upon only those theories of the case which are presented by the pleadings and which are supported by competent evidence. *First Nat. Bank North Platte v. Cardenas*, 299 Neb. 497, 909 N.W.2d 79 (2018). To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction. *Id*. If the instructions given, which are taken as a whole, correctly state the law, are not misleading, and adequately cover the issues submissible to a jury, there is no prejudicial error concerning the instructions and necessitating a reversal. *Id*.

[11,12] In the medical malpractice context, the element of proximate causation requires proof that the physician's deviation from the standard of care caused or contributed to the injury or damage to the plaintiff. *Thone v. Regional West Med. Ctr.*, 275 Neb. 238, 745 N.W.2d 898 (2008). Expert testimony is almost always required to prove proximate cause. *Id*. Additionally, Nebraska does not recognize the loss-of-chance doctrine. *Cohan v. Medical Imaging Consultants*, 297 Neb. 111, 900 N.W.2d 732 (2017), *modified on denial of rehearing* 297 Neb. 568, 902 N.W.2d 98.

Jonas' proposed instruction sought to allow him to recover damages if the jury found that his testicles were descended at birth, but later ascended, or if only one testicle was undescended at birth. The injuries and damages that Jonas alleged he suffered included infertility, an increased risk of testicular cancer, and psychological distress. However, Jonas' expert witnesses testified that he suffered his injuries because of bilateral undescended testicles from birth. They explicitly disagreed with the theory of ascending testicles presented by the defendants, and Jonas' experts did not testify that Jonas

would have the same damages if only one testicle was undescended. Moreover, Jonas' experts were not in a position to opine on damages caused by ascending testicles, because both experts stated that it was impossible that Jonas had ascending testicles. Danoff went on to state that the concept of ascending testicles was not a "viable concept." Consequently, Jonas did not establish proximate cause between his alleged injuries and the defendants' failure to diagnose and treat him for a single undescended testicle or ascending testicles.

Additionally, and as noted by the district court in its order denying Jonas' motion for a new trial, Jonas' alleged injury of an increased risk of testicular cancer is not a recognized injury under Nebraska law. See *Cohan v. Medical Imaging Consultants, supra*.

The district court did not err by refusing to give Jonas' requested jury instruction because such an instruction was incompatible with Jonas' theory of the case contained in his pretrial memorandum, was contrary to established law in Nebraska, and was not warranted by the evidence.

## 2. Directed Verdict

In its response to Jonas' objection to instruction No. 5 at the jury instruction conference, the district court stated: "Therefore, I guess, in essence, I'm directing a verdict on your request, or your claim, that the ascended testicle resulted in some injury to your client, because you have offered no evidence that an ascended testicle causes infertility or an increased risk of cancer." In its denial of Jonas' motion for a new trial, the court again stated that it was directing a verdict against Jonas' claim for relief on his claim that he suffered damages even if he had only a single undescended testicle or ascending testicles. In his appeal, Jonas argues that there was sufficient evidence presented to survive a directed verdict. We disagree.

[13-15] Before evidence is submitted to a jury, there is a preliminary question for the court to decide, when properly

raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it and upon whom the burden is imposed. *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999). A directed verdict is proper only when reasonable minds can draw but one conclusion from the evidence. *Scheele v. Rains*, 292 Neb. 974, 874 N.W.2d 867 (2016). Medical expert testimony regarding causation based upon possibility or speculation is insufficient; it must be stated as being at least "probable," in other words, more likely than not. *Doe v. Zedek, supra*. The burden of proof is not sustained by evidence from which a jury can arrive at its conclusions only by guess, speculation, or conjecture. See *id*.

As iterated above, and as stated by the district court in its denial of Jonas' motion for a new trial, no expert testimony was presented by Jonas which connected his alleged injuries to only a single undescended testicle or ascending testicles. Jonas' experts testified that he suffered from congenital bilateral cryptorchidism, which condition caused him to be infertile and have an increased risk of cancer. Notably, both Ferentz and Danoff testified that it was not physically possible for Jonas' right testicle to have ever descended, because his gubernaculum, the structure which brings a male's testicles into his scrotum, did not reach his scrotum. Further, both experts testified that it was not possible for the left testicle to have descended because it was "heavily scarred" and adhered to the structures of Jonas' inguinal canal, the area directly above a male's scrotum. Therefore, Jonas' entire theory of the case was that his testicles could not have descended into his scrotum and were undescended from birth.

Additionally, Ferentz testified that it was not possible for Jonas to have ascending testicles and Danoff indicated that the theory of ascending testicles was not a "viable concept"; therefore, neither expert was in a position to offer opinions on any damages that Jonas may have suffered even if he had ascending testicles. Although Jonas argues on appeal that

both Ferentz and Danoff testified that Jonas could have suffered injuries even if his testicles had descended at birth and then later ascended, we disagree that the experts' testimony supports this conclusion.

Jonas argues that Ferentz' testimony that "[a]fter a year, if the testicle is still too warm, if it's still inside the body, it's going to lead to problems down the road," supports a finding that even ascended testicles can result in an increased risk of infertility or of cancer. However, this statement came after Ferentz testified, "So generally speaking, if a testicle doesn't descend within about a year of child — after childbirth, then the problems will seem — will develop, or can develop, or are more likely to develop." Thus, Ferentz was not testifying that a testicle could be damaged any time it was not in the scrotum; rather, he was specifically testifying that a testicle could become damaged if it did not descend at childbirth and was not corrected within a year of childbirth.

We recognize that Danoff testified that "if the testicle is exposed to body temperature for a long period of time, i.e. being undescended, it will result in a severely damaged testicle." However, Danoff's statement again directly followed a statement indicating that injuries associated from undescended testicles occur when the testicles are not descended at birth, not any time in a male's life. Danoff stated, "Well, if the testicles remain undescended past the age of one, perhaps two, the testicle becomes dystrophic, which means the ability of the testicle to both make sperm, which we call spermatogenesis, and make testosterone, is severely damaged . . . ." Therefore, contrary to Jonas' assertion on appeal, Danoff was not testifying that any time a male's testicles are not in the scrotum, they can become damaged; rather, he was specifically testifying that when testicles do not descend at birth and then remain undescended for a year, they can become dystrophic. Neither expert testified that the dangers inherent in an undescended testicle are the same if the testicle has descended and later ascended.

On the other hand, experts for the defense testified that a male who has ascending testicles has the same risk of developing cancer as the rest of the male population. Bukowski expressly stated that a male with descended testicles at birth should have testicles that function normally, provide normal fertility, and carry a minimal risk of testicular cancer development. Thus, the only expert testimony that addressed damages for ascending testicles was produced by the defense, and the testimony expressly stated that Jonas did not suffer damages as a result of ascended testicles. Therefore, because Jonas' experts did not present any testimony specifically regarding Jonas' injuries as a result of ascended testicles, the jury would have had to speculate as to whether Jonas' ascended testicles caused any injuries and the extent of those injuries. It is the duty of the district court to refrain from submitting to the jury the issue of damages where the evidence is such that it cannot determine that issue without indulging in speculation and conjecture. *Snyder v. Contemporary Obstetrics & Gyn.*, 258 Neb. 643, 605 N.W.2d 782 (2000). Consequently, the district court was correct in directing a verdict against Jonas' claim that his alleged injuries were caused by a single undescended testicle or ascending testicles.

### 3. Jury Questions Submitted to Court

Jonas has multiple assigned errors related to the court's response to the jury's two questions submitted during its deliberations which we address together. We find that the district court did not abuse its discretion in answering these questions.

After the case was submitted to the jury, the jury asked the court two questions. First, the jury asked, "'Does the plaintiff's claim of undescended testicles mean both testicles, e.g., bilateral?'" Second, it asked, "'Does "undescended" mean from birth?[']"] After consulting with counsel for both parties by telephone on the record, the court answered "yes" to each question.

[16] The trial judge is in the best position to sense whether the jury is able to proceed with its deliberations and has considerable discretion in determining how to respond to communications indicating that the jury is experiencing confusion. *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015). Further, Neb. Rev. Stat. § 25-1116 (Reissue 2016) states:

> After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony, or if they desire to be informed as to any part of the law arising in the case, they may request the officer to conduct them to the court where the information upon the point of law shall be given, and the court may give its recollection as to the testimony on the point in dispute in the presence of or after notice to the parties or their counsel.

Therefore, the court has discretion to further instruct the jury and is not limited to simply directing the jury to reread the instructions previously given as Jonas asserts should have been done.

### (a) Court Did Not Preclude Jury From Performing Its Function as Fact Finder and Did Not Comment on Credibility of Witnesses

Jonas asserts that, in answering "yes" to each question submitted by the jury, the district court did not allow the jury to perform its role as a fact finder and directed the jury to rely on the defendants' witnesses. We disagree.

In support of his argument, Jonas directs us to numerous cases in which a trial judge went outside his or her role and commented during trial on the evidence from the bench. We find those cases inapplicable to a situation in which the judge provides a response to a jury question, and we decline to further address them.

However, Jonas also relies upon *Bahrs v. R M B R Wheels, Inc.*, 6 Neb. App. 354, 574 N.W.2d 524 (1998), a premises

liability action against two separate entities. In that case, we determined it was improper to instruct the jury that the two defendants were to be treated the same and that if one was liable, so was the other. Jonas cites this case, stating that we determined "it was prejudicial error requiring reversal for the court to have *sua sponte* decided there was a joint enterprise between the defendants" because such a decision is for the jury. Brief for appellant at 24. However, we specifically stated, "assuming, without deciding, that the trial court had the authority to determine sua sponte as a preliminary matter the existence of a joint enterprise between the defendants," it was error to do so because there was no evidence of a joint enterprise. *Bahrs v. R M B R Wheels, Inc.*, 6 Neb. App. at 361-62, 574 N.W.2d at 529.

Here, the court did not instruct the jury requiring it to treat a certain set of facts as true. As discussed in more detail below, the court answered the jury's questions in a manner that was consistent with Jonas' theory of the case. The court did not instruct the jury that Jonas had ascended testicles or a single undescended testicle; rather, it simply responded to the jury's questions in a manner which was consistent with Jonas' theory of the case—that he had bilateral undescended testicles.

Furthermore, Jonas cannot prove he was prejudiced by the court's answers to the jury questions. As stated above, the court's answers to the jury questions are consistent with Jonas' theory of the case as stated in his complaint, pretrial memorandum, and opening statement. Additionally, the court stated that the only definition of "undescended" given during trial was "undescended from birth." Finally, the court based its answers on the fact that both of Jonas' expert witnesses testified that Jonas had bilateral undescended testicles from birth. Thus, the court's answers to the jury's questions were taken directly from Jonas' complaint and the evidence that Jonas presented during trial. Jonas was not prejudiced by the court's answers to the jury's questions.

### (b) District Court Did Not Abuse Its Discretion
### in Consulting Dictionary to Answer
### Jury's Questions

Jonas also assigns that the district court erred in consulting a "general dictionary" in answering the jury's questions. This assigned error is without merit. In explaining to counsel its decision to answer the jury's questions, the court stated:

> With respect to, "Does undescended mean from birth?" I'm going to answer, as used in Instruction No. 5, undescended testicles means from birth. And the reason I'm going to do that is because, one, the definition — I looked for a definition of undescended, and they all refer, basically, back to undescended testicles. And in the Merriam-Webster Dictionary, it says, retained within the inguinal region rather than descending into the scrotum, undescended.

Jonas argues that this constituted the trial judge's conducting his own independent investigation of the facts, contrary to Nebraska law. However, the trial judge went on to state that his response to the question was also based on the testimony from Jonas' witnesses and how the term "undescended" was used throughout the trial. Thus, the trial judge did not base his answer to the jury's question solely on the dictionary definition of undescended. The court's response was based on Jonas' complaint, pretrial memorandum, and opening statement where he stated, "His diagnosis, undescended testicles. That means from birth, that's what that term means." And it was consistent with the testimony of Jonas' expert witnesses. Thus, the court did not abuse its discretion in consulting a "general dictionary" because the court's response was consistent with Jonas' theory of the case and the evidence presented at trial.

### 4. Motion for New Trial

In his final assigned error, Jonas asserts that the district court abused its discretion in denying his motion for a new

trial. We disagree. Jonas' motion was predicated on his belief that the district court erred in issuing instruction No. 5 and erred again by answering the jury's questions. However, as stated above, we find no error in either of these. Therefore, there are no grounds for a new trial, and the district court was correct in denying the motion.

### 5. DEFENDANTS' CROSS-APPEAL

[17] The defendants attempted to file a cross-appeal in this case, arguing that the district court erred in denying their motion for sanctions against Jonas. Under Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014), a party filing a cross-appeal must set forth a separate division of the brief prepared in the same manner and under the same rules as the brief of appellant. *Vokal v. Nebraska Acct. & Disclosure Comm.*, 276 Neb. 988, 759 N.W.2d 75 (2009). Thus, under § 2-109(D)(1), the cross-appeal section must set forth a separate title page, a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of facts. See *Vokal v. Nebraska Acct. & Disclosure Comm., supra*.

Here, the defendants failed to properly set forth any assignment of error in their cross-appeal. Errors argued but not assigned will not be considered on appeal. *Id.* Therefore, we decline to address the defendants' attempted cross-appeal.

### VI. CONCLUSION

For the foregoing reasons, we affirm the decisions of the district court.

AFFIRMED.